Matthias, J.
A determination of the questions presented in these cases requires the construction of the provisions of Section 4785-70, General Code, The facts are not in dispute.
Harry J. Thompson, the relator in the first action, endeavored to qualify as a candidate for county representative. He is a qualified elector of Montgomery county, Ohio. On April 3, 1930, he filed with the board of elections of that county a declaration of his candidacy for the nomination for the office of representative to the general assembly of the state to be voted on at the primary election to be held on August 12, 1930, and requested that his name be printed on the official ballot as a candidate of the Democratic Party. With said declaration of candidacy, relator filed a petition signed by one hundred and one residents and qualified electors of Montgomery county, Ohio, who voted for the Democratic candidate for governor at the next preceding election, in November, 1928, stating that relator is a member of the Democratic Party and in their opinion well qualified to perform the duties for which he is a candidate.
It is conceded by the board of elections that said declaration and petition are regular and sufficient in all respects except that according to the requirements of Section 4785-70, General Code (113 Ohio *280 Laws, 338), the petition contains an insufficient number of signatures, in that it contains but one hundred and one signatures of electors, that number being less than five per cent, of the number of electors of said county who voted for the Democratic candidate for governor at the preceding state election held in November, 1928. For that reason, and only upon that ground, the board of elections refused and rejected said declaration of candidacy and the petition, and announced its refusal to cause relator’s name to be printed upon the official primary ballot as such candidate.
In the second action Arthur A. Nixon is the relator and seeks to qualify as a candidate for election as a member of the Republican State Central Committee from the Third congressional district of Ohio. On April 3, 1930, he filed with the defendant board of elections of Montgomery county, Ohio, a declaration of his candidacy for such position, and requested that his name be printed on the official primary ballot, as provided by law. With said declaration of candidacy the relator filed a petition signed by five residents and qualified electors of Montgomery county, Ohio, who voted for the Republican Party candidate for Governor at the next preceding general election held in November, 1928.
It is conceded that said petition is regular and sufficient in all respects except that it is not signed by the requisite number of electors, as required by Section 4785-70, General Code, in that it has less than five per cent, of the number of electors in said congressional district who voted for the Republican candidate for governor at the next preceding state election, held in November, 1928. For that reason *281 and only upon that ground the board of elections refused and rejected said declaration of candidacy and petition and announced its refusal to cause his name to be printed upon the official primary ballot as such candidate.
The portion of Section 4785-70, General Code (113 Ohio Laws, 338), pertinent to the consideration of the questions presented, is as follows: “Each person desiring to become a party candidate by the method of declaration shall, not later than 6:30 p. m. of the sixtieth day before the date of the primary at which such nominations are to be made, file a declaration. of candidacy, accompanied by a petition, signed by at least one thousand electors of his party, from at least one-third of the counties of the state in the ease of an office to be voted for by the electors of the entire state; and at least one hundred electors of his party, or five per cent, of the electors who voted for the party candidate for governor at the next preceding regular state election, in the case of an office in a county or district, larger than a county and less than the state; and at least five electors of his party in all subdivisions less than a county; and shall pay the fee required by law.”
In the first case we are concerned only with the provision prescribing the number of signatures on a petition of one desiring to be a candidate for county office, and that requirement is “at least one hundred electors of his party, or five per cent of the electors who voted for the party candidate for Governor at the next preceding regular state election.” It is contended by the respondents that such petition must have the signatures of five per cent, of the electors who voted for the party candidate for Governor at *282 the next preceding election. It is an elementary rule of construction that words are to be given their usual and ordinary signification unless a consideration of the entire statute, or of all statutory provisions in pari materia, clearly shows that a different meaning should be ascribed to the language employed. Ordinarily the word “or” indicates an alternative, and unless there is language in this statute clearly manifesting a legislative intention to the contrary it must be concluded that the two provisions relating to county candidates are in the alternative, and, therefore, that a petition complying with either is sufficient. There are no provisions of the statute inconsistent with that view. On the contrary, other provisions of the section strongly support that conclusion. A petition supporting the candidacy for a state office is sufficient if it be signed by one thousand electors, and in subdivisions less than a county the signatures of only five are required. Presumably a less number would be required to support the candidacy for a county office than for a state office, and a greater number required than for a subdivision less than a county. It is probable that the two provisions are in the statute as a result of some inadvertence. We cannot conceive that there was a legislative intent to require more signatures to petitions of candidates for county office than for a state office, but if this statute be construed as contended by respondents it would result in requiring candidates for county office in many of the counties of the state to procure a greater number of petitioners than is required of candidates for state office. Certainly such an absurd conclusion would be unwarranted unless required by clear and unambiguous *283 language. All the provisions of this section construed together are consistent with the use of the word “or” in its ordinary and usual signification. Hence, compliance with either requirement is sufficient.
It follows that a petition of a candidate for an office to be voted for by the electors of the county or district larger than a county and less than the state, signed by one hundred electors of the candidate’s political party or by five per cent, of the electors who voted for the party candidate for Governor at the next preceding regular state election, meets the requirements of Section 4785-70, General Code.
The relator in the second case is a candidate for membership in a party controlling committee, as defined by Section 4785-63, General Code. Under the provisions of Section 4969, General Code, the certificate of five electors only was required, but that section was repealed (113 Ohio Laws, 412) upon the enactment of the Election Code. However Section 4785-72, General Code, which prescribes the form of petition to be used, contains the following provision: “In case of a petition for a candidate for member of a party controlling committee the five persons signing such petition of candidacy shall subscribe and swear to (or affirm) the same before any person authorized by law to administer an oath or take an affirmation.”
In the absence of a more specific provision, the intention manifested by the Legislature that five sponsors would be sufficient in support of the candidacy for such party committee membership should be given effect. That specific provision should not be ignored by reason of the general provision of *284 Section 4785-63, that state central committeemen shall be elected at primaries in the same manner provided for the nomination of candidates for state and county offices.
The rule, that in the construction of a statute effect must be given, if possible, to every part thereof, has application here, and when there are contradictory provisions in statutes susceptible of reasonable! constructions, which will not nullify each other, it is the duty of the court to so construe them. Giving force and effect to the provisions above referred to, we conclude that a petition accompanying the declaration of a candidate for election as a member of a state central committee is sufficient if signed by five electors of the candidate’s political party who are residents of the district.
The writ is therefore allowed in each case.

Writs allowed.

Marshall, C. J., Kinkade, Robinson, Jones, Day and Allen, JJ.j concur.